**THE UNITED STATES DISTRICT COURT**

**DISTRICT OF UTAH**

| | |
|---|---|
| **GREGORY R. MILLER, an individual,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**SAFE HOME SECURITY, INC.,**<br><br>**Defendant.** | **REPORT AND RECOMMENDATION**<br><br>**Case No. 2:25-cv-00172-JNP-JCB**<br><br>**Chief District Judge Jill N. Parrish**<br><br>**Magistrate Judge Jared C. Bennett** |

## INTRODUCTION[1]

After pro se Plaintiff Gregory R. Miller ("Mr. Miller") filed his second amended complaint against Defendant Safe Home Security, Inc. ("Safe Home Security"),[2] Safe Home Security moved to dismiss under Fed. R. Civ. P. 12(b)(6).[3] In the analysis set forth below, the court concludes that Mr. Miller's second amended complaint fails to state any claims upon which relief can be granted. Additionally, the court concludes that it would be futile to provide Mr. Miller with the opportunity to amend his complaint a third time. Therefore, the court recommends that Safe Home Security's motion to dismiss be granted and that Mr. Miller's second amended complaint be dismissed with prejudice.

---

[1] This case is referred to Magistrate Judge Jared C. Bennett under 28 U.S.C. § 636(b)(1)(B). ECF No. 16.

[2] ECF No. 24.

[3] ECF No. 25.

## PROCEDURAL BACKGROUND

Mr. Miller filed his original complaint in this case in March 2025.[4] After the named defendants moved to dismiss under Rule 12(b)(1) and Rule 12(b)(6),[5] Mr. Miller amended his complaint as a matter of course.[6] Consequently, Chief District Judge Jill N. Parrish denied as moot the pending motions to dismiss.[7] The defendants named in Mr. Miller's first amended complaint moved to dismiss under Rule 12(b)(6).[8] The court subsequently entered a Report and Recommendation, in which the court recommended that: (1) Mr. Miller's first amended complaint be dismissed without prejudice under Fed. R. Civ. P. 41(b) for failure to comply with the pleading requirements of Fed. R. Civ. P. 8; (2) Mr. Miller be given leave to amend his complaint; and (3) the named defendants' motion to dismiss be denied as moot.[9] Before Chief Judge Parrish issued a final ruling on the Report and Recommendation, Mr. Miller filed a second amended complaint naming Safe Home Security as the sole defendant.[10] Safe Home Security moved to dismiss the second amended complaint under Rule 12(b)(6).[11] Chief Judge Parrish later issued a Memorandum Decision and Order adopting the Report and Recommendation and dismissing without prejudice Mr. Miller's first amended complaint.[12] Chief Judge Parrish also

[4] ECF No. 1.

[5] ECF No. 10; ECF No. 11.

[6] ECF No. 14.

[7] ECF No. 21.

[8] ECF No. 17.

[9] ECF No. 23.

[10] ECF No. 24.

[11] ECF No. 25.

[12] ECF No. 28.

denied as moot the named defendants' motion to dismiss because Mr. Miller's first amended complaint was "dismissed" and "Mr. Miller [had] filed a second amended complaint."[13]

## FACTUAL BACKGROUND[14]

Safe Home Security operates in Utah under the burglar alarm company license of Security Systems, Inc. ("Security Systems").[15] Mr. Miller alleges that Jack Elbaum ("Mr. Elbaum") is "[e]mployed as [Safe Home Security]'s [o]fficer and [r]esponsible Utah [m]anager."[16] Mr. Miller contends that Mr. Elbaum "is an 'aggravated felon' named in a final deportation order."[17] Mr. Miller claims, based upon information and belief, that Security Systems "intentionally omitted Mr. Elbaum from its Utah professional license application" in an effort to conceal Mr. Elbaum's identity from the Utah Division of Occupational and Professional Licensing ("DOPL") because Security Systems "knew that [Mr.] Elbaum's felony conviction and employment as [Safe Home Security]'s officer and responsible Utah manager automatically disqualified [Safe Home Security] from licensure under Utah law."[18]

Mr. Miller asserts that Mr. Elbaum is also an employee and officer of Glyde Solar, LLC ("Glyde Solar"), which is "closely affiliated with Safe Home Security."[19] Mr. Miller contends, based upon information and belief, that "Glyde Solar intentionally omitted Mr. Elbaum from

---

[13] *Id*. at 2-3.

[14] This factual background is taken from the allegations in Mr. Miller's second amended complaint. ECF No. 24.

[15] *Id*. at 3.

[16] *Id*. at 2.

[17] *Id*.

[18] *Id*. at 3.

[19] *Id*. at 4.

its . . . Utah electrical contractor license application, despite an express legal duty to include him on the application and disclose his felony conviction to DOPL."[20] Mr. Miller claims, based on information and belief, that Glyde Solar subsequently "surrendered its Utah professional license to avert DOPL proceedings against the license that it believed [Mr.] Miller may initiate."[21]

Mr. Miller alleges that Mr. Elbaum offered nearly $200,000 to Mr. Miller in exchange for Mr. Miller's agreement to "make no statement, complaint, referral, or report to any regulatory, licensing, or law enforcement officer or agent thereof that would in any way implicate or purport to implicate Mr. Elbaum."[22] Mr. Miller asserts that "the context and content of the negotiations between [Mr.] Miller and Mr. Elbaum regarding the . . . offer" made it "clear that Mr. Elbaum intended to protect the licenses of at least two entities: Safe Home Security (operating under the license of [Security Systems]); and Glyde Solar."[23] When it became "clear to Mr. Elbaum that [Mr.] Miller would not agree to" the offer, "negotiations ended."[24]

Mr. Miller claims that soon after those negotiations, Safe Home Security "published websites under [Mr.] Miller's name" (collectively, "Miller Websites") that "were publicly available until at least February 20, 2025."[25] Mr. Miller alleges, based upon information and belief, that

> the Miller Websites were created and published by Safe Home Security employees at the direction and under the supervision of

---

[20] *Id*.

[21] *Id*. at 5.

[22] *Id*. at 4 (citation modified).

[23] *Id*.

[24] *Id*.

[25] *Id*. at 5.

> [Mr.] Elbaum in his capacity as a Safe Home Security officer and manager directly responsible for its Utah operations, using Safe Home Security resources, for Safe Home Security's intended benefit, during Mr. Elbaum's regular work hours, and within the regular spatial boundaries of Mr. Elbaum's Safe Home Security employment.[26]

Mr. Miller contends, again based upon information and belief, that "Safe Home Security employees who assisted Mr. Elbaum in creating and publishing the Miller Websites include Jacob Olson" ("Mr. Olson").[27]

Mr. Miller claims that the Miller Websites "published defamatory claims for the purpose of harming [Mr.] Miller reputationally and financially," including the statements that "disciplinary action against [Mr. Miller's] CPA license limits his ability to practice in his field"; Mr. Miller "has been deemed a vexatious litigant by three different Utah judges" and "is now required to have legal representation before filing any new legal actions or documents in court"; and Mr. Miller "has recently begun speaking publicly again" and that the "resurgence in public activity comes after his demands for hundreds of thousands of dollars to remain silent were rejected."[28] Mr. Miller asserts that all those statements are false.[29]

Mr. Miller also claims that the Miller Websites cast him in a false light.[30] Specifically, Mr. Miller alleges that the Miller Websites published the following statement about his prior conviction for misdemeanor stalking: "[T]he details of the case reveal a pattern of behavior that

---

[26] *Id.*

[27] *Id.*

[28] *Id.* at 6 (citation modified).

[29] *Id.*

[30] *Id.* at 7-8.

raised significant concerns for the safety and well-being of the victim. Stalking involves repeated and unwanted attention, harassment, or other conduct directed at a specific person that would cause a reasonable person to feel fear."[31] Mr. Miller further contends that at least one of the Miller Websites "featured an image of an ominous hooded figure alongside text describing [Mr.] Miller's case, thereby suggesting that [Mr.] Miller was convicted of physically menacing or predatory behavior."[32] Mr. Miller asserts that those "characterizations case [him] in a false light" because "[i]t was never alleged in the prosecution resulting in [Mr.] Miller conviction that [he] caused the victim to fear for her safety or engaged in physical behavior toward the victim," "[t]here was no allegation that [Mr.] Miller contacted the victim directly or . . . threatened the victim," and the judge who presided over Mr. Miller's trial did not "find evidence of conduct directed at a specific person that would cause a reasonable person to feel fear."[33]

Mr. Miller contends that the Miller Websites "have directly caused [him] to suffer loss of employment, with one company summarily terminating his employment and another rescinding a signed job offer after citing the [Miller Websites] and their content."[34] Mr. Miller also claims that Safe Home Security's conduct "has resulted in [him] experiencing extreme[,] prolonged emotional suffering and psychological trauma," as well as a "formal diagnosis with depression, anxiety[,] and Post[-]Traumatic Stress Disorder."[35]

---

[31] *Id*. at 7 (citation modified).

[32] *Id*.

[33] *Id*. (citation modified).

[34] *Id*. at 8.

[35] *Id*.

Based on those factual allegations, Mr. Miller asserts claims against Safe Home Security for defamation and defamation per se, false light, tortious interference with economic relations, intentional infliction of emotional distress, negligent employment, civil conspiracy, and violations of 15 U.S.C. § 8131.[36] Mr. Miller asserts federal-question jurisdiction under 28 U.S.C. § 1331 for his federal claim and diversity jurisdiction under 28 U.S.C. § 1332(a) for his state-law claims.[37]

## LEGAL STANDARDS

When considering a motion to dismiss under Rule 12(b)(6), the court "accept[s] as true the well[-]pleaded factual allegations and then determine[s] if the plaintiff has provided 'enough facts to state a claim to relief that is plausible on its face.'"[38] In addition to accepting a plaintiff's well-pleaded facts as true, the court "view[s] them in the light most favorable to [the plaintiff] . . . and draw[s] all reasonable inferences from the facts in favor of [the plaintiff]."[39] "Rather than adjudging whether a claim is 'improbable,' 'factual allegations in a complaint must be enough to raise a right to relief above the speculative level.'"[40] "[I]n examining a complaint under Rule 12(b)(6), [the court] disregard[s] conclusory statements and look[s] only to whether the remaining, factual allegations plausibly suggest the defendant is liable."[41]

---

[36] *Id*. at 8-14.

[37] *Id*. at 2.

[38] *Hogan v. Winder*, 762 F.3d 1096, 1104 (10th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[39] *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021).

[40] *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555-56) (citation modified).

[41] *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012).

Recognizing that Mr. Miller is proceeding pro se, the court is mindful that "[a] pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers."[42] However, it is not "the proper function of the district court to assume the role of advocate for the pro se litigant,"[43] and the court "will not supply additional facts, nor will [it] construct a legal theory for [a pro se] plaintiff that assumes facts that have not been pleaded."[44]

## ANALYSIS

As shown below: (I) Mr. Miller's second amended complaint fails to state any claims upon which relief can be granted; and (II) it would be futile to provide Mr. Miller with the opportunity to amend his complaint a third time. Therefore, Safe Home Security's motion to dismiss should be granted, and Mr. Miller's second amended complaint should be dismissed with prejudice.

### I. Mr. Miller's Second Amended Complaint Fails to State Any Claims Upon Which Relief Can Be Granted.

Mr. Miller's second amended complaint fails to state claims upon which relief can be granted because (A) he does not plausibly allege that Safe Home Security is responsible for Mr. Elbaum's and Mr. Olson's alleged tortious conduct. Further, for alternative reasons, he fails to state claims against Safe Home Security under Utah law for: (B) defamation and defamation per se, (C) false light, (D) tortious interference with economic relations, (E) intentional infliction of

---

[42] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[43] *Id.*

[44] *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989) (per curiam).

emotional distress, (F) negligent employment, and (G) civil conspiracy.[45] Additionally, Mr. Miller fails to state a claim under federal law for (H) violations of 15 U.S.C. § 8131. Each issue is addressed below.[46]

A. Mr. Miller Fails to Plausibly Allege That Safe Home Security Is Responsible for Mr. Elbaum's and Mr. Olson's Alleged Tortious Conduct.

Mr. Miller has not plausibly alleged that Safe Home Security is liable for Mr. Elbaum's and Mr. Olson's alleged tortious conduct. Under Utah law, for an employer to be liable for an employee's tortious conduct under the doctrine of respondeat superior, the conduct must fall within the scope of the employee's employment.[47]

> In determining the scope of employment for vicarious liability purposes, [courts consider] three relevant criteria: (1) whether the employee's conduct is of the general kind the employee is employed to perform; (2) whether the conduct is within the hours of the employee's work and the ordinary spatial boundaries of the employment; and (3) whether the conduct is motivated, at least in part, by the purpose of serving the employer's interest.[48]

---

[45] Because this is a "diversity case governed by Utah law, [the court] must ascertain and apply Utah law such that [the court] reach[es] the same result that the Utah courts would reach." *Utah Power & Light Co. v. Fed. Ins. Co.*, 983 F.2d 1549, 1553 (10th Cir. 1993).

[46] In addition to arguing that Mr. Miller's second amended complaint fails to state claims upon which relief can be granted, Safe Home Security argues that Mr. Miller's second amended complaint should be stricken for violating Fed. R. Civ. P. 15(a)(2) because it was filed without Safe Home Security's consent or the court's leave. Although true that Mr. Miller filed his second amended complaint before Chief Judge Parrish issued a final ruling on the court's Report and Recommendation concerning Mr. Miller's first amended complaint, Chief Judge Parrish accepted the filing of Mr. Miller's second amended complaint in her Memorandum Decision and Order adopting the Report and Recommendation. ECF No. 28 at 2-3. Therefore, the court declines to recommend striking Mr. Miller's complaint.

[47] *Birkner v. Salt Lake Cnty.*, 771 P.2d 1053, 1056 (Utah 1989); *see also Clark v. Pangan*, 2000 UT 37, ¶ 8, 998 P.2d 268, 270.

[48] *Acor v. Salt Lake City Sch. Dist.*, 2011 UT 8, ¶ 15, 247 P.3d 404, 408 (citation modified).

Under the first factor, "an employee's acts or conduct must be generally directed toward the accomplishment of objectives within the scope of the employee's duties and authority, or reasonably incidental thereto."[49] Put another way, "the employee must be about the employer's business and the duties assigned by the employer, as opposed to being wholly involved in a personal endeavor."[50] "[T]he second factor is no longer viewed as controlling" "[b]ecause work may often be performed at nontraditional times and places by employees today."[51] As for the third factor, "an employee's purpose or intent, however misguided in its means, must be to further the employer's business interests."[52]

Mr. Miller fails to make any allegations that relate to whether Mr. Elbaum and Mr. Olson created the Miller Websites within the scope of their employment with Safe Home Security. Given that the second factor above is no longer considered controlling, the court addresses only the first and third factors. Considering the first factor, Mr. Miller does not allege—and could not do so in good faith—that Mr. Elbaum's and Mr. Olson's alleged creation of the Miller Websites is the general kind of work that Mr. Elbaum and Mr. Olson were employed to perform at Safe Home Security, a burglar alarm company. As for the third factor, Mr. Miller fails to include any allegations that Mr. Elbaum's and Mr. Olson's conduct furthered the interests of Safe Home Security. Given the lack of any factual allegations addressing either of those two factors, Mr. Miller has not plausibly alleged that Mr. Elbaum's and Mr. Olson's alleged tortious conduct

---

[49] *Birkner*, 771 P.2d at 1057.

[50] *Id*.

[51] *Peterson v. SCIS Air Sec. Corp.*, No. 2:16-CV-849-DS, 2017 WL 943923, at *3 (D. Utah Mar. 9, 2017) (citing *M.J. v. Wisan*, 2016 UT 13, ¶ 59, 371 P.3d 21, 32).

[52] *Birkner*, 771 P.2d at 1057

occurred within the scope of their employment with Safe Home Security.[53] For that reason alone, Mr. Miller fails to any state claims upon which relief can be granted. Further, as demonstrated below, Mr. Miller's claims fail for alternative reasons.

B. Mr. Miller Fails to State Claims for Defamation and Defamation Per Se.

Mr. Miller fails to state a claim for defamation or defamation per se. First, Mr. Miller's defamation claim fails because he does not plausibly allege the required element of special damages.

> To establish a defamation claim under Utah law, a plaintiff must demonstrate "(1) the defendant published the statements in print or orally; (2) the statements were false; (3) the statements were not subject to privilege; (4) the statements were published with the requisite degree of fault; and (5) the statements resulted in damages."[54]

[53] In his opposition to Safe Home Security's motion to dismiss, Mr. Miller attempts to cure his failure to include in his second amended complaint sufficient factual allegations concerning Mr. Elbaum's and Mr. Olson's scope of employment. Specifically, Mr. Miller asserts that Mr. Elbaum's alleged tortious conduct "served the interests" of Safe Home Security because "Mr. Elbaum is employed to ensure [Safe Home Security]'s viability as a going concern." ECF No. 26 at 8-9 of 22. Mr. Miller also contends that Mr. Elbaum "directed [Mr.] Olson to assist in the creation and publication of" the Miller Websites and that because Mr. Olson was employed by Safe Home Security as a web designer, "he engaged in the general kind of work that he was hired to perform by designing the Miller Websites." *Id*. at 9 of 22 (citation modified). The court declines to consider those assertions because Mr. Miller cannot supplement or amend his second amended complaint in his opposition to Safe Home Security's motion to dismiss. *Gardner v. Nelson*, No. 2:25-CV-00511-HCN-CMR, 2026 WL 1162775, at *1 (D. Utah Mar. 2, 2026) ("[A] party cannot amend [his] complaint through a brief in opposition to a motion to dismiss." (citation modified)), *report and recommendation adopted*, No. 2:25-CV-00511, 2026 WL 1162860 (D. Utah Mar. 30, 2026).

[54] *Total Quality Sys., Inc. v. Universal Synaptics Corp.*, 679 F. Supp. 3d 1196, 1218-19 (D. Utah 2023) (quoting *Oman v. Davis Sch. Dist.*, 2008 UT 70, ¶ 68, 194 P.3d 956, 972).

"The fifth element requires a plaintiff to plead special damages, or the loss of something having economic or pecuniary value."[55] When pleading special damages, Fed. R. Civ. P. 9(g) requires that "[i]f an item of special damage is claimed, it must be specifically stated." "Special damages must be pleaded with enough specificity that the opposing party has an adequate opportunity to defend against the plaintiff's claims."[56]

Mr. Miller fails to plausibly allege special damages with the necessary specificity. Mr. Miller's only allegations related to damages are that: (1) the Miller Websites "have directly caused [him] to suffer loss of employment, with one company summarily terminating his employment and another rescinding a signed job offer after citing the [Miller Websites] and their content";[57] and (2) the Miller Websites caused him to suffer "direct and consequential damages in an amount to be proven at trial, but that exceeds $75,000."[58] Those conclusory allegations fail to plead special damages with the requisite specificity.[59] Further, the court is not required to

---

[55] *Porter v. Staples the Off. Superstore, LLC*, 521 F. Supp. 3d 1154, 1163 (D. Utah 2021) (citing *Allred v. Cook*, 590 P.2d 318, 320-21 (Utah 1979)).

[56] *Judge v. Saltz Plastic Surgery, PC*, 2014 UT App 144, ¶ 17, 330 P.3d 126, 132 (citation modified); *see also Diesel Power Source v. Crazy Carl's Turbos, Inc.*, No. 2:14-CV-00826-DN, 2017 WL 1131892, at *3 (D. Utah Mar. 24, 2017) ("When special damages are an essential ingredient of the plaintiff's claim for relief, such as in cases of defamation, they must be specially pleaded with some specificity in order to demonstrate the sufficiency of the plaintiff's claim for relief, particularly to defeat a motion to dismiss under Rule 12(b)(6) as well as to inform the defendant of the nature of the claim." (citation modified)).

[57] ECF No. 24 at 8.

[58] *Id*. at 9.

[59] *Porter*, 521 F. Supp. at 1163-64 (dismissing defamation claim based in part on the plaintiff's failure to plausibly allege special damages where "the only allegation in the [c]omplaint that could be construed as a special harm [was] the effect on [the plaintiff]'s ability to find further employment," and the plaintiff "allege[d] nothing further to support [that] assertion").

accept conclusory allegations when conducting a Rule 12(b)(6) analysis.[60] Because Mr. Miller does not plausibly allege the element of special damages, his defamation claim fails.

Second, Mr. Miller fails to state a claim for defamation per se because he does not plausibly plead that the alleged statements on the Miller Websites fall into one of the four categories of statements that constitute defamation per se. "Defamation per se consists of defamatory words that are 'of such common notoriety that damage can be presumed from the words alone.'"[61] To constitute defamation per se under Utah law, the statements "'must charge criminal conduct, loathsome disease, conduct that is incompatible with the exercise of a lawful business, trade, profession, or office,' or sexual misconduct."[62]

In his claim for defamation per se, Mr. Miller alleges only that "[c]ertain statements published on [the Miller Websites] constitute defamation per se because the statements accuse [Mr.] Miller of conduct incongruous with the exercise of a lawful business, trade, profession, or office."[63] Mr. Miller does not specify which statements on the Miller Websites allegedly fall into that category. However, it appears he is referring to the allegation in his second amended complaint that the Miller Websites stated that "disciplinary action against [Mr. Miller's] CPA license limits his ability to practice in his field."[64] That statement does not constitute defamation

---

[60] *Khalik*, 671 F.3d at 1191 ("[I]n examining a complaint under Rule 12(b)(6), [the court] disregard[s] conclusory statements and look[s] only to whether the remaining, factual allegations plausibly suggest the defendant is liable.").

[61] *Shanley v. Hutchings*, 716 F. Supp. 3d 1179, 1197 (D. Utah 2024) (quoting *Baum v. Gillman*, 667 P.2d 41, 43 (Utah 1983)).

[62] *Id*. (quoting *Baum*, 667 P.2d at 43).

[63] ECF No. 24 at 9 (citation modified).

[64] *Id*. at 6 (citation modified).

per se because it does not "'charge . . . conduct that is incompatible with the exercise of a lawful business, trade, profession, or office.'"[65] The statement did not accuse Mr. Miller of unlawfully practicing as a CPA. Instead, merely it merely asserted that Mr. Miller's ability to practice as a CPA was limited. Because that statement does not fall into the relevant category of statements that constitute defamation per se, Mr. Miller fails to state a claim for defamation per se.[66]

C. Mr. Miller Fails to State a False Light Claim.

Mr. Miller's false light claim fails because he does not plausibly allege that Safe Home Security knew about the purported falsity of the statements on the Miller Websites.

> A prima facie case for false light requires a plaintiff to demonstrate that (1) the defendant publicized a matter concerning the plaintiff that placed the plaintiff before the public in a false light, (2) the false light in which the plaintiff was placed would be highly offensive to a reasonable person, and (3) the defendant knew or recklessly disregarded the falsity of the publicized matter and the false light in which the plaintiff was placed.[67]

On the third element, Mr. Miller fails to include any well-pleaded factual allegations that Safe Home Security had any knowledge of the alleged falsity of the statements on the Miller Websites. Instead, Mr. Miller makes only the conclusory allegation that Safe Home Security "knew or recklessly disregarded the falsity of the statements publicized on [the Miller Websites] and the false light in which they have placed [Mr.] Miller."[68] Without any supporting factual

[65] *Shanley*, 716 F. Supp. 3d at 1197 (quoting *Baum*, 667 P.2d at 43).

[66] *Id*. at 1198 (concluding that allegations of plagiarism did not constitute defamation per se because "[t]he test used in Utah requires that the conduct be incompatible with the *lawful* exercise of a given business or profession," and the plaintiff "[did] not provide any authority under Utah law indicating that plagiarism is unlawful" (emphasis in original)).

[67] *Jacob v. Bezzant*, 2009 UT 37, ¶ 21, 212 P.3d 535, 543-44.

[68] ECF No. 24 at 10.

allegations, Mr. Miller's parroting of the language of the third element is woefully insufficient to plausibly allege that element.[69] Therefore, Mr. Miller fails to state a claim for false light.

D. Mr. Miller Fails to State a Claim for Tortious Interference With Economic Relations.

Mr. Miller fails to state a claim for tortious interference with economic relations because he does not plausibly allege the required element of improper means. Under Utah law, the elements of a claim for tortious interference with economic relations are: "(1) intentional interference with existing or potential economic relations, (2) by improper means, (3) which causes injury to the plaintiff."[70] Mr. Miller fails to plead the second element because, as demonstrated above, his defamation and false light claims fail. That compels the conclusion that he fails to plausibly plead that Safe Home Security acted with improper means.[71] Accordingly, Mr. Miller's claim for tortious interference with economic relations fails.

---

[69] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (providing that a complaint will not survive a Rule 12(b)(6) motion to dismiss if it includes only "a formulaic recitation of the elements of a cause of action" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" (citation modified)).

[70] *Zhang v. Transpose Platform Mgmt., LLC*, No. 2:23-CV-00475-DBB-CMR, 2024 WL 2750547, at *7 (D. Utah May 29, 2024) (citing *Harvey v. Ute Indian Tribe of Uintah & Ouray Rsrv.*, 2017 UT 75, ¶ 71, 416 P.3d 401, 425).

[71] *DP Creations, LLC v. Ortiz*, No. 219CV00948HCNDBP, 2021 WL 2895239, at *4 (D. Utah Mar. 5, 2021) ("The court has already considered the defamation claims and found they are insufficient. Thus[,] they cannot form the basis for the improper means element for intentional interference with economic relations."); *Nunes v. Rushton*, 299 F. Supp. 3d 1216, 1229-37 (D. Utah 2018) (concluding that the defendant was entitled to summary judgment on the plaintiff's claims for defamation, defamation per se, false light, and business disparagement and, therefore, that the plaintiff could not satisfy the improper means element of her claim for tortious interference with economic relations); *Davidson v. Baird*, 2019 UT App 8, ¶ 55, 438 P.3d 928, 945 ("Here[,] the only 'improper means' [the plaintiffs] allege are [the defendants'] purportedly defamatory statements. Because [the plaintiffs] have not presented sufficient evidence to sustain their claims for defamation, it follows that they also have not presented sufficient evidence to prove the 'improper means' element for intentional interference with economic relations.").

E. Mr. Miller Fails to State a Claim for Intentional Infliction of Emotional Distress.

Mr. Miller fails to state a claim for intentional infliction of emotional distress because he does not plausibly allege one of the elements of that claim. To state a claim for intentional infliction of emotional distress under Utah law, a plaintiff must plausibly allege that: (1) the defendant's conduct was outrageous and intolerable to the point that it offended generally accepted standards of decency and morality; (2) the defendant intended to cause, or acted in reckless disregard of the likelihood of causing, emotional distress; (3) the plaintiff suffered severe emotional distress; and (4) the defendant's conduct proximately caused the emotional distress.[72] Under the first element,

> [t]o be considered outrageous, the conduct must evoke outrage or revulsion; it must be more than unreasonable, unkind, or unfair. Conduct is not necessarily outrageous merely because it is tortious, injurious, or malicious, or because it would give rise to punitive damages, or because it is illegal. The liability for intentional infliction of emotional distress clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.[73]

Mr. Miller's only allegations somewhat related to the first element of his claim are that: (1) Safe Home Security's conduct "has resulted in [him] experiencing extreme[,] prolonged emotional suffering and psychological trauma," as well as a "formal diagnosis with depression, anxiety[,] and Post[-]Traumatic Stress Disorder";[74] and (2) "[b]eyond being merely unreasonable, unkind[,] or unfair, [Safe Home Security]'s actions directed at [him] with the

---

[72] *Prince v. Bear River Mut. Ins. Co.*, 2002 UT 68, ¶ 37, 56 P.3d 524, 535.

[73] *Bennett v. Jones, Waldo, Holbrook & McDonough*, 2003 UT 9, ¶ 64, 70 P.3d 17, 32 (citation modified).

[74] ECF No. 24 at 8.

intention of inflicting emotional distress are outrageous and intolerable in that they offend against generally accepted standards of decency and morality."[75] Those conclusory allegations fail to plausibly allege the first element of a claim for intentional infliction of emotional distress. Moreover, the court is not required to accept conclusory allegations when considering a motion to dismiss under Rule 12(b)(6).[76] Therefore, Mr. Miller fails to state a plausible claim for intentional infliction of emotional distress.

F. Mr. Miller Fails to State a Claim for Negligent Employment.

Mr. Miller fails to state a claim for negligent employment because he does not plausibly allege a required element. To state a claim for negligent employment under Utah law, "a plaintiff must show that (1) the employer knew or should have known that its employees posed a foreseeable risk of harm to third parties; (2) the employees inflicted such harm; and (3) the employer's negligent hiring, supervision, or retention of the employees proximately caused the injury."[77]

Mr. Miller fails to plead the first element. Mr. Miller's only allegations going to that element are:

> That Mr. Elbaum's deviant characteristics were known to [Safe Home Security], and his propensity for harmful conduct toward third parties was foreseeable to [Safe Home Security], is clear from [Mr.] Elbaum's felony conviction . . . ; his adjudication as an 'aggravated felon' ineligible for relief from deportation; his presence in the United States in defiance of his final deportation order; [Safe Home Security]'s measures to conceal Mr. Elbaum from licensing authorities despite express legal duties to disclose his

[75] *Id*. at 12.

[76] *Khalik*, 671 F.3d at 1191.

[77] *Jensen v. Gale*, No. 1:13-CV-00030 DN, 2014 WL 7246948, at *5 (D. Utah Dec. 18, 2014) (citation modified).

> employment and provide copies of his fingerprint cards; and related entity Glyde Solar's July 2024 license surrender after the revelation of its application fraud concerning Mr. Elbaum was perceived by Glyde Solar as imminent.[78]

Taking those allegations as true, they may plausibly plead that Mr. Elbaum is a convicted felon and that Safe Home Security concealed his identity for licensing purposes. However, they fail to plausibly plead that Safe Home Security knew or should have known it was foreseeable that Mr. Elbaum would commit the alleged conduct that Mr. Miller claims was harmful—namely, the publication of the Miller Websites.[79] Further, Mr. Miller has not made any well-pleaded factual allegations that Safe Home Security knew or should have known that Mr. Elbaum was a foreseeable risk of harm to Mr. Miller.[80] Because Mr. Miller does not plausibly allege the first element, his claim for negligent employment fails.

---

[78] ECF No. 24 at 12-13.

[79] *Jensen v. Gale*, No. 1:13-CV-00030 DN, 2014 WL 7246948, at *6 (D. Utah Dec. 18, 2014) (dismissing the plaintiff's claim for negligent employment based in part on the fact that there were "no factual allegations or reasonable inferences that can be drawn to suggest" that the employer was "on notice that [the employee] had a propensity to commit" the alleged conduct); *see also J.H. ex rel. D.H. v. W. Valley City*, 840 P.2d 115, 124-25 (Utah 1992) (affirming the trial court's award of summary judgment to the defendants on the plaintiff's claim for negligent hiring in part because the "plaintiff . . . produced no evidence that [the employee] did or said anything prior to his molestation of [the] plaintiff that would have put [the employer] on notice that [the employee] had a propensity to commit such acts").

[80] *Peterson v. SCIS Air Sec. Corp.*, No. 2:16-CV-849-DS, 2017 WL 943923, at *2 (D. Utah Mar. 9, 2017) (dismissing the plaintiff's claim for negligent employment based in part on the fact that "there [were] insufficient factual allegations to suggest that [the employer] knew or should have known that [the] other employees posed a foreseeable risk of harm to [*the plaintiff*]" (emphasis added)).

G. Mr. Miller Fails to State a Claim for Civil Conspiracy.

Mr. Miller's civil conspiracy claim fails because he does not plausibly plead an essential element of the claim. To state a claim for civil conspiracy under Utah law, a plaintiff must allege: "(1) a combination of two or more persons, (2) an object to be accomplished, (3) a meeting of the minds on the object or course of action, (4) one or more unlawful, overt acts, and (5) damages as a proximate result thereof."[81]

> The claim of civil conspiracy requires, as one of its essential elements, an underlying tort. Thus, in order to sufficiently plead a claim for civil conspiracy, a plaintiff is obligated to adequately plead the existence of such a tort. Where plaintiffs have not adequately pleaded *any* of the basic torts they allege[,] dismissal of their civil conspiracy claim is appropriate.[82]

As demonstrated above, Mr. Miller fails to plausibly plead any underlying tort claim against Safe Home Security. Accordingly, he fails to state a claim for civil conspiracy.

H. Mr. Miller Fails to State a Claim for Violations 15 U.S.C. § 8131.

Mr. Miller fails to state a claim for violations of 15 U.S.C. § 8131 because he does not allege that Safe Home Security had a specific intent to profit from the Miller Websites. In relevant part, 15 U.S.C. § 8131 provides:

> Any person who registers a domain name that consists of the name of another living person, or a name substantially and confusingly similar thereto, without that person's consent, *with the specific intent to profit* from such name by selling the domain name for financial gain to that person or any third party, shall be liable in a civil action by such person.[83]

---

[81] *Estrada v. Mendoza*, 2012 UT App 82, ¶ 13, 275 P.3d 1024, 1029 (citation modified).

[82] *Id*. (citation modified) (emphasis in original).

[83] 15 U.S.C. § 8131(1)(A) (emphasis added).

Mr. Miller fails to plausibly allege that Safe Home Security had a specific intent to profit from the Miller Websites. Mr. Miller's only allegation to that effect is that Safe Home Security "has registered the . . . domain names [of the Miller Websites] with the specific intent to profit from the names by selling them for financial gain to [Mr.] Miller or a third party."[84] Mr. Miller's allegation is wholly conclusory, and, thus, the court is not required to accept it as true.[85] Further, it merely repeats one of the requirements of 15 U.S.C. § 8131, which is insufficient to constitute a well-pleaded fact.[86] Therefore, Mr. Miller fails to state a claim for violations of 15 U.S.C. § 8131.

## II. It Would Be Futile to Provide Mr. Miller With the Opportunity to Amend His Complaint a Third Time.

Mr. Miller should not be provided with an opportunity to amend his complaint for a third time because it would be futile. Before dismissing a pro se plaintiff's complaint for failure to state a claim, the court must determine whether to give the plaintiff leave to amend the complaint to cure any pleading deficiencies.[87] When considering a pro se plaintiff's complaint, "the district court can dismiss with prejudice for failure to state a claim if . . . the alleged facts are obviously

---

[84] ECF No. 24 at 14.

[85] *Khalik*, 671 F.3d at 1191.

[86] *Iqbal*, 556 U.S. at 678.

[87] *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001) (providing that before dismissing a pro se plaintiff's complaint for failure to state a claim, "the district court should allow a [pro se] plaintiff an opportunity to cure technical errors or otherwise amend the complaint when doing so would yield a meritorious claim").

insufficient to allow the plaintiff to prevail[,] and . . . any further opportunity to amend would be futile."[88]

Because Mr. Miller has failed to file a complaint that states cognizable claims despite having *three chances* to do so, allowing him to file a fourth complaint would be futile. As indicated in the procedural background above, Mr. Miller's original complaint was attacked by two motions to dismiss for failure to state a claim under Rule 12(b)(6). Presumably in response to those motions, Mr. Miller amended his complaint as a matter of course. Mr. Miller's first amended complaint was likewise the subject of a Rule 12(b)(6) motion to dismiss. Further, the court dismissed Mr. Miller's first amended complaint without prejudice under Rule 41(b) for failure to comply with the pleading requirements of Rule 8. Mr. Miller then amended his complaint a second time. As shown by the analysis above, Mr. Miller still has not stated any viable claims. Therefore, it would be futile to provide Mr. Miller with a third opportunity to amend his complaint.[89] Consequently, the court should grant Safe Home Security's motion to dismiss and dismiss Mr. Miller's second amended complaint with prejudice.

[88] *Wilson v. Reid*, 781 F. App'x 789, 791 (10th Cir. 2019) (citation modified); *see also Kay*, 500 F.3d at 1217 ("Dismissal of a pro se complaint for failure to state a claim is proper only where it is obvious that the plaintiff cannot prevail on the facts he has alleged[,] and it would be futile to give him an opportunity to amend." (citation modified)).

[89] *See, e.g.*, *Sheldon v. Vermonty*, 269 F.3d 1202, 1207 n.5 (10th Cir. 2001) (explaining that dismissal with prejudice is appropriate where a plaintiff's amended pleadings fail to cure the deficiencies in his claims); *Creamer v. Washburn L. Sch.*, No. 19-CV-2044-CM-TJJ, 2019 WL 2647682, at *3 (D. Kan. Apr. 24, 2019) ("Plaintiff has already filed an Amended Complaint that also fails to state a claim upon which relief may be granted, so it appears it would be futile to allow Plaintiff to amend her complaint again."), *report and recommendation adopted*, No. 19-2044-CM-TJJ, 2019 WL 2646660 (D. Kan. June 27, 2019); *Carey v. Avis Budget Car Rental, LLC*, No. 13-CV-0326-CVE-FHM, 2013 WL 5744754, at *7 (N.D. Okla. Oct. 23, 2013) ("Plaintiff has previously been given leave to amend her complaint. Plaintiff's amended

## RECOMMENDATION

For the reasons stated above, the court HEREBY RECOMMENDS that Safe Home Security's motion to dismiss[90] be GRANTED and that Mr. Miller's second amended complaint be DISMISSED WITH PREJUDICE.

## NOTICE TO PARTIES

Copies of this Report and Recommendation are being sent to all parties, who are hereby notified of their right to object.[91] The parties must file any objections to this Report and Recommendation within 14 days after being served with a copy of it.[92] Failure to object may constitute waiver of objections upon subsequent review.

DATED this 14th day of August 2026.

BY THE COURT:

JARED C. BENNETT
United States Magistrate Judge

---

complaint, like her original complaint, fails to state a claim. The Court finds that granting plaintiff leave to amend her complaint a second time would be futile.").

[90] ECF No. 25.

[91] 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).

[92] 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).